**COMMONWEALTH of Kentucky, Appellant**

v.

**Lyric ANGUS, Appellee**

**NO. 2012–CA–001836–DG**

Court of Appeals of Kentucky.

RENDERED: DECEMBER 12, 2014; 10:00 A.M.

BRIEFS FOR APPELLANT: Michael J. O'Connell, Jefferson County Attorney, Louisville, Kentucky, Jack Conway, Attorney General of Kentucky, David A. Sexton, Special Assistant Attorney General, Frankfort, Kentucky.

BRIEF FOR APPELLEE: Michael R. Mazzoli, Louisville, Kentucky, Paul S. Gold, Louisville, Kentucky.

BEFORE: JONES, LAMBERT, AND STUMBO, JUDGES.

*OPINION*

LAMBERT, JUDGE:

This Court granted the Commonwealth's motion for discretionary review to consider the Jefferson Circuit Court's opinion affirming the Jefferson District Court's dismissal of an aggravated drunk driving prosecution. In this appeal, the Commonwealth contends that the circuit court improperly upheld the suppression of all of the Commonwealth's evidence due to a violation of the defendant's *Miranda*[1] rights and improperly concluded that double jeopardy prevented the Commonwealth from appealing that ruling. Finding no error, we affirm.

On June 1, 2010, Lyric Angus was arrested and charged with aggravated operating a motor vehicle under the influence of alcohol or drugs, second offense; driving on a DUI suspended license, first offense; failure to display a hardship driving privilege decal; and for possession of alcohol by a person under the age of 21. The Uniform Citation indicated that Angus had been stopped at 9:04 p.m. and arrested at 9:19 p.m. for operating a motor vehicle on Shelbourne Circle and for her failure to affix the hardship license decal to the rear window of her vehicle. The officer smelled alcohol coming from Angus, who was un-

der the age of 21 at the time of the offense. The officers found a large bottle of Vodka in the vehicle, and Angus admitted that she had been drinking and driving. She also admitted that she was not driving her car for one of the approved reasons. The Breath Test Operators Report completed by Officer Kristopher Johnson provided that Angus had been Mirandized and subsequently waived her *Miranda* rights. She admitted that she had consumed a cup and a half of Vodka at the pool between 3:00 p.m. and 7:00 p.m. that afternoon. Angus submitted to a breath test, and the result of that test was 0.189.

The matter went to a bench trial on November 17, 2010. The first witness to testify was Doug Prather, who is a records custodian from the Kentucky Department of Transportation. He brought a certified copy of Angus's driving record with him, which showed that she has a date of birth of July 16, 1989. The status of her license on June 1, 2010, was suspended with hardship privileges permission to drive. The hardship order was entered March 17, 2010, and a hardship license was issued in Hardin County on March 18, 2010. Mr. Prather did not have any information about the terms and conditions of the hardship license.

The next witness to testify was Officer Robert Cox, who is a patrol officer with the University of Louisville Police Department. He was on duty on June 1, 2010, the evening Angus was arrested. The department had received an anonymous tip a few days before concerning her car, a 2010 red Chevrolet Camaro with out-of-town license plates. Officer Cox saw the vehicle in a parking lot and looked up the owner's information. Through his background research, Officer Cox had determined that the person in question was Angus, and he

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

found out that her license had been suspended, but that she had received a hardship license. She did not have a decal on her car indicating this.

While performing surveillance, Officer Cox saw someone get in the vehicle, drive from one building to another, and park in another parking space. Officer Cox notified another officer, Lt. David James, and they both arrived within seconds of each other. Lt. James approached the driver's window. Officer Cox talked to Angus after she exited the car at Officer James's request, and he could smell alcohol coming from the car and from her. He noticed that her speech was slurred, and she told them she had just come from a friend's home where they were involved in an altercation. He had a suspicion that she was under the influence of alcohol at that time. Angus produced her driver's license when asked, and her hardship paperwork was attached to it. She had the decal with her, but she had not yet affixed it on the car. Her license established that Angus was under the age of 21. Field sobriety tests were conducted, but Officer Cox only was a witness to these tests; he did not administer them. Based upon his observation, Angus did not perform well. Officer Cox placed Angus in handcuffs while Lt. James filled out the paperwork to arrest her for not having the hardship decal displayed and for operating on a suspended DUI license. The officers also charged her with possession of alcohol by a minor and later with DUI. Officer Cox transported Angus to Metro Corrections, where she was processed and a breath test was performed on her.

On cross-examination, Officer Cox stated that both of the officers' vehicles were behind Angus's vehicle. He stayed at the back of the car while Lt. James approached the driver's window. He could hear the conversation between Lt. James

and Angus, but could not recall it verbatim. He recalled hearing Lt. James ask if she had been drinking. He did not clearly hear the response. He heard Angus ask several times if she was going to jail. When she asked Officer Cox this question after they had gotten her out of the car, he answered, "Yes." He believed that it was after the field sobriety tests had been completed. Officer Jordan Brown, who was in the academy at the time, conducted the field sobriety tests and Officer Cox heard him explain to her how to perform them, but he could not repeat this verbatim. Officer Cox stated that when he and Lt. James were talking with her, Angus was not free to leave; she was going to jail.

At this point in the hearing, Angus made a motion to suppress all evidence after the stop of the vehicle pursuant to Kentucky Rules of Criminal Procedure (RCr) 9.78 based upon a violation of her *Miranda* rights. Defense counsel stated that he was not aware until hearing Officer Cox's testimony that there were grounds to make the motion. Counsel argued that Officer Cox testified that Angus was not free to leave and that she was going to jail. In response, the Commonwealth argued that this was a traffic stop; roadside interrogations are not considered custody pursuant to Kentucky law for purposes of *Miranda*. And whether she was free to leave was not the relevant question. The officers were conducting an investigation during a routine traffic stop. Upon defense counsel posing the question to him, Officer Cox admitted that he had not read Angus her *Miranda* rights and that he had not heard Lt. James do so either. Based upon this answer, counsel for Angus argued that the officers should have read Angus her *Miranda* rights because she was not free to leave and was going to jail. Counsel for Angus then requested that his client take the stand to testify as to her thoughts that night. The court ruled that

this was premature until Lt. James had testified.

Lt. David James was the next witness to testify. He is also a police officer with the University of Louisville Police Department. He was on duty the night of June 1, 2010, supervising patrol officers. He worked with Officer Cox to locate a particular red Camaro that belonged to a person with a hardship license. When they found the vehicle, they saw that the hardship decal was not displayed on the back window. They pulled in behind the car after the driver pulled it into a parking place; they had watched the driver move it from a different location in the apartment complex parking lot. Lt. James walked up to the driver's side window. He saw that the driver was on the phone and trying to hide something. Lt. James kept tapping on the window to get her to stop talking on the phone and open the door. He asked her to step out of the vehicle. When she opened the door, he smelled a faint odor of alcoholic beverage from inside of the vehicle and her breath. After she exited the vehicle, Lt. James retrieved a partially empty bottle that Angus had put in the back seat, which he gave to Officer Cox. In conversation with Angus, she told him the bottle contained Vodka. Lt. James also searched the vehicle for weapons.

While Lt. James was searching the vehicle, Angus was talking to Officer Cox. Lt. James and Angus then had a conversation about whether she had been drinking. She said that she had been drinking at a friend's apartment and had just left. She thought that person had called the police because they had gotten into an altercation. Based on what he observed and what she told him, he suspected that Angus was under the influence of alcohol and impaired. He asked her to take field sobriety tests, and he conducted one of the tests. Based upon the results, Lt. James

determined that Angus was under the influence of alcohol. He arrested her and told her she was being arrested for operating a motor vehicle without the hardship decal displayed, for driving on a DUI suspended license, and for DUI. Another person took Angus to the station, but Lt. James talked with her there as well.

On cross-examination, Lt. James stated that he was in uniform, had a weapon with him, and was driving a marked police car. A total of three officers were on the scene. Officer Brown and Officer Cox were talking with Angus while he was searching the vehicle. When they approached, her car was pulled into a parking place with a curb in front of it. The driver's side bumper of his vehicle was near her vehicle's rear bumper, and Officer Cox pulled his vehicle in the opposite way. She would not have been able to back out without hitting the two police vehicles. He agreed that Angus's car was blocked in. His vehicle's lights were turned on and flashing. He confirmed that he had asked her if she had been drinking; she admitted that she had. Angus also asked if she was going to jail, and he told her that she was. He stated that he did not read Angus her *Miranda* rights. From the time they stopped her, she was not free to leave. But Lt. James said Angus probably thought that she was free to go because he never told her she could not leave. He later limited this statement to indicate that there would have been a point when she knew she could not leave.

Defense counsel again raised his motion to suppress all of the Commonwealth's evidence. The Commonwealth argued that she was not subject to custodial arrest or to *Miranda* because this was a traffic stop, and therefore her testimony was irrelevant. In response, defense counsel stated that field sobriety test results are testimonial in nature and are protected from self-

incrimination. Defense counsel went on to argue that while ordinary traffic stops generally do not require a *Miranda* warning, this case was not an ordinary traffic stop. Here, there were a number of officers, at least one of whom was armed, surrounding her car and blocking it in. Defense counsel requested permission to put Angus on the stand to testify about her perceptions. The Commonwealth argued that the *Miranda* requirement is triggered when a person is arrested following field sobriety tests and taken in for more questioning. Until that point, there is no requirement to Mirandize a person. Defense counsel then distilled his argument to state that when a stop becomes a seizure, *Miranda* applies. It is no longer investigatory when a person is asked to do something. It is what a reasonable person would have felt under the circumstances; whether he was free to leave or not. The Commonwealth cited case law holding that *Miranda* warnings are not required before field sobriety tests are administered. Defense counsel argued that she had been seized when she was told she was going to jail.

The district court permitted Angus to testify, over the Commonwealth's objection, in support of the motion to suppress. She recalled the incident with the officers on June 1, 2010. Three officers were present. She was sitting in her car when Lt. James approached her car. The officers' two cars were behind hers, which was parked facing the curb. She got out of the car at Lt. James's request, and they had a conversation. He asked her if she had been drinking, and she said yes. She asked if she was going to jail, and he said yes. She did not feel free to leave and believed that she was in police custody. If she had taken off, she did not know what was going to happen, but she knew they would get her again. She stated that none of the officers warned her of her *Miranda* rights. Their tone of voice indicated that she would have to comply with their requests.

Defense counsel renewed the motion to suppress, arguing that the stop had changed to a situation where Angus was not free to leave and she was entitled to be informed of her *Miranda* rights. Therefore, the stop, the arrest, the statements, and the field sobriety results should all be suppressed pursuant to the United States and Kentucky Constitutions. Angus was seized, was entitled to *Miranda* warnings, and anything she said should be suppressed. Furthermore, officers did not have the right to search the car incident to the arrest without a warrant because no exigent circumstances existed. The Commonwealth argued that this was merely a roadside traffic stop, which cannot be a seizure under the Fourth Amendment or subject to *Miranda* warnings. A defendant's state of mind about whether he is free to leave does not matter.

The proceedings continued on the following day, when the district court granted the motion to suppress and went on to explain its ruling in detail. The court first held that the stop was valid due to the lack of the hardship decal. It then held that when Angus asked if she was going to go to jail and the answer was yes, no reasonable person would feel free to leave. Therefore, Angus was in custody at that point. The court also pointed to the presence of three officers at the scene and Angus's car being blocked in the parking lot. Because she was in custody, *Miranda* warnings were required. Furthermore, the field sobriety tests were excluded as testimonial in nature as Angus was in custody when they were performed.

Defense counsel moved to dismiss the charges because all of the evidence had been excluded, unless the Commonwealth had other proof to offer. The Common-

wealth stated that it would not agree to a dismissal and pointed out that other charges were still pending. The Commonwealth also stated that it did not intend to call any other witnesses. The district court granted Angus's motion to dismiss, after which defense counsel requested that the court find her not guilty because the Commonwealth had no proof of any of the charges. The district court agreed, stating that no evidence had come in. The court found her not guilty and dismissed the case. Later, the Commonwealth sought to clarify the court's order, noting that the court had ruled that the stop was valid, and that the DUI charge and the driving on a DUI suspended license charge were dismissed. Defense counsel stated that his understanding was that everything after the stop was suppressed and the whole case was dismissed. The court clarified that it had not dismissed the suspended license charge, but defense counsel stated that the license was valid because it was a hardship license. Also, defense counsel pointed out there was no testimony about what rules were attached to her hardship license. The parties argued about when the officers discovered the information about the missing decal, either before or after she was in custody. Defense counsel argued that it came after she was in custody and should be excluded along with the rest of the evidence pursuant to the earlier ruling. The court ultimately ruled that the charges arising from June 1, 2010, were dismissed and the earlier order would stand. The parties discussed how the court jacket would reflect the court's ruling, and the Commonwealth suggested the language that the district court adopted almost in its entirety, which was agreed to by defense counsel.

By order as set forth in the daily disposition report, the district court dismissed the case after suppressing the evidence over the Commonwealth's objection, specifically stating: "Court Finding DISMISSED COURT TRIAL {stop valid—evidence suppressed—dismissed over ky obj}[.]" The Commonwealth appealed the district court's ruling to the circuit court, where the Commonwealth argued that *Miranda* warnings were not required when the officers initially stopped Angus and that the district court's ruling and dismissal did not constitute an acquittal for double jeopardy purposes. It argued that Angus should not be permitted to benefit from waiting until mid-trial to make a challenge to the evidence that could have been made before trial and before jeopardy had attached. In its counterstatement of appeal, Angus argued that the Commonwealth could not pursue the appeal because jeopardy had attached and that the suppression ruling was correct. The circuit court entered an opinion and order on September 25, 2012, affirming the district court's decision.[2] In the opinion and order, the circuit court held that the district court properly suppressed the Commonwealth's evidence and that double jeopardy barred the Commonwealth's appeal. This Court granted the Commonwealth's motion for discretionary review on February 12, 2013, and this appeal follows.

In its brief, the Commonwealth continues to argue that there was no Fifth Amendment violation and that double jeopardy does not bar a trial on the merits. In response, Angus contends that the Commonwealth cannot lawfully appeal the judgment of the district court because she

**2.** Prior to holding oral arguments in the appeal, the circuit court had prematurely entered an opinion and order that reversed the district court's suppression ruling and remanded the matter for further trial proceedings. The circuit court withdrew that opinion and order on July 15, 2011.

was acquitted and that the district and circuit courts nevertheless properly ruled that the Commonwealth's evidence should have been suppressed.

■ As Angus states in her brief, the first issue to be decided is the potentially dispositive constitutional issue; namely, whether the Commonwealth is legally permitted to appeal from the district court's judgment. The Commonwealth contends that double jeopardy does not prevent a new trial because the district court did not enter an acquittal verdict but merely dismissed the case without determining her guilt or innocence. Angus, on the other hand, contends that she was acquitted at the conclusion of the bench trial and that the Commonwealth is not permitted to appeal the district court's ruling.

■ The double jeopardy clause of the Fifth Amendment of the United States Constitution, which underpins the issue raised in the present case, provides that "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb[.]" Section 13 of the Kentucky Constitution contains a similar prohibition: "No person shall, for the same offense, be twice put in jeopardy of his life or limb[.]" When jeopardy attaches depends upon whether a jury or a bench trial is held. For a trial by jury, jeopardy attaches when the jury is empaneled and sworn:

> [U]nder the Double Jeopardy Clause, as applied to the states through the Fourteenth Amendment, the U.S. Supreme Court explicitly held that "[t]he federal rule that jeopardy attaches when the jury is empaneled and sworn is an integral part of the constitutional guarantee against double jeopardy" and it is binding on the states. [*Crist v. Bretz*, 437 U.S. 28, 38, 98 S.Ct. 2156, 2162, 57 L.Ed.2d 24 (1978).]

*Cardine v. Commonwealth*, 283 S.W.3d 641, 646 (Ky.2009). However, when a bench trial is held, as in this case, jeopardy attaches when the first witness is sworn:

> In a nonjury trial, jeopardy attaches when the court begins to hear evidence. The Court has consistently adhered to the view that jeopardy does not attach, and the constitutional prohibition can have no application, until a defendant is 'put to trial before the trier of facts, whether the trier be a jury or a judge.'

*Serfass v. U.S.*, 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975) (internal citations omitted).

Section 115 of the Kentucky Constitution provides for matter of right appeals to another court, "except that the [C]ommonwealth may not appeal from a judgment of acquittal in a criminal case, other than for the purpose of securing a certification of law[.]" Kentucky Revised Statutes (KRS) 505.030 prohibits a second prosecution if one of several conditions is met:

> When a prosecution is for a violation of the same statutory provision and is based upon the same facts as a former prosecution, it is barred by the former prosecution under the following circumstances:
>
> (1) The former prosecution resulted in:
>
>> (a) An acquittal, or
>>
>> (b) A conviction which has not subsequently been set aside; or
>
> (2) The former prosecution resulted in a determination by the court that there was insufficient evidence to warrant a conviction; or
>
> (3) The former prosecution was terminated by a final order or judgment, which has not subsequently been set aside, and which required a determination inconsistent with any fact or legal proposition necessary to a conviction in the subsequent prosecution; or

(4) The former prosecution was improperly terminated after the first witness was sworn but before findings were rendered by a trier of fact. Termination under either of the following circumstances is not improper:

    (a) The defendant expressly consents to the termination or by motion for mistrial or in some other manner waives his right to object to the termination; or

    (b) The trial court, in exercise of its discretion, finds that the termination is manifestly necessary.

KRS 505.030.

While the Commonwealth is permitted under limited circumstances to take an interlocutory appeal to the Court of Appeals from an adverse ruling of the circuit court, *see* KRS 22A.020(4), there is no statutory counterpart when the case begins in district court, as is the case here. Rather, the Commonwealth may only seek review by requesting a writ via an original action in the circuit court. *See* KRS 23A.080; *Commonwealth v. Williams*, 995 S.W.2d 400, 403 (Ky.App.1999) ("[T]he circuit court is without jurisdiction to take an interlocutory 'appeal' from district court as the proper method of procedure is through an original action seeking a writ of mandamus or prohibition."). This Court confirmed this holding in *Commonwealth v. Bell*, 365 S.W.3d 216, 223 (Ky.App.2012), concluding:

    [I]f the Commonwealth elected to try this case without the suppressed evidence, then upon an acquittal it would be constitutionally prohibited from seeking appellate review of the suppression order. Ky. Const. § 115 ("[T]he Commonwealth may not appeal from a judgment of acquittal in a criminal case[.]"); *see also Ballard v. Commonwealth*, 320 S.W.3d 69, 72 (Ky.2010). In sum, we agree there is no adequate remedy by appeal if the district court is indeed acting erroneously. *Peters*, 353 S.W.3d at 595.

In *Bell*, the suppression issue was considered in a pretrial hearing, unlike in the present case. In this case, the Commonwealth did not seek a writ to contest the district court's ruling.

The ultimate question we must address in this case is whether Angus was acquitted. In *Cozzolino v. Commonwealth*, 395 S.W.3d 485, 487–88 (Ky.App.2012), review denied (Apr. 17, 2013), this Court addressed a situation where, similar to this case, the district court granted the defendant's suppression motion that was properly made during the course of a bench trial. The district court suppressed all of the evidence that was obtained after the defendant had been placed in handcuffs, which constituted most of the evidence. Defense counsel moved the district court to dismiss the case based upon the lack of sufficient evidence to prove the defendant's guilt; in essence, this constituted a motion for a directed verdict finding the defendant not guilty. When the Commonwealth indicated that it did not have any further evidence to introduce, the court "weighed the evidence presented to it and found that the officer's testimony of the odor of alcohol and Cozzolino's red, glassy eyes was insufficient to prove DUI. The court then granted the motion for directed verdict and found Cozzolino not guilty." *Id.* at 487. On appeal, the circuit court agreed with the defendant that the evidence had been properly suppressed, but reversed the directed verdict, holding that the record had sufficient evidence to find him guilty of DUI and remanded the case to the district court. *Id.* On discretionary review, this Court reversed, holding that double jeopardy prevented the Commonwealth from retrying the defendant for

DUI. *Id.* at 488. We explained this holding as follows:

The circuit court remanded the case to the district court because the case was dismissed on the defendant's own motion, citing to *United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978). This is true when a mistrial is granted on the defense's own motion and "does not turn on issues related to guilt." *Derry v. Commonwealth,* 274 S.W.3d 439, 444 (Ky.2008). Was the case at hand dismissed on issues related to guilt? We find that it was.

"An acquittal requires either the judge or jury to evaluate and weigh the evidence related to guilt and to determine that it is legally insufficient to sustain a conviction." *Id.* at 445. This is exactly what happened in this case. After most of the Commonwealth's evidence was suppressed and the Commonwealth rested, the trial court found that the evidence was insufficient to sustain a conviction. It then directed a verdict in Cozzolino's favor.

In Kentucky, "[a] motion for a directed verdict of acquittal ... is the established procedural device for challenging the sufficiency of the evidence to support a conviction." Leslie W. Abramson, 10 Kentucky Practice, *Substantive Criminal Law,* § 26:51 (2nd ed.2000); *see also Commonwealth v. Benham,* 816 S.W.2d 186, 187–188 (Ky.1991) ("[T]here must be evidence of substance, and the trial court is expressly authorized to direct a verdict for the defendant if the prosecution produces no more than a mere scintilla of evidence."). Indeed, we have held that a directed verdict is equivalent to an acquittal under the law of double jeopardy. *See Commonwealth v. Mullins,* 405 S.W.2d 28, 29 (Ky.1966); *Smith v. Massachusetts,* 543 U.S. 462, 467–468, 125 S.Ct.

1129, 160 L.Ed.2d 914 (2005) (Recognizing that state law directed "the trial judge to enter a finding of not guilty 'if the evidence is insufficient as a matter of law to sustain a conviction' ... [and] [a]n order entering such a finding thus meets the definition of acquittal that our double-jeopardy cases have consistently used: It 'actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged.' ").

*Walker v. Commonwealth,* 288 S.W.3d 729, 743 (Ky.2009).

"A judgment of acquittal, whether based on a jury verdict of not guilty or on a ruling by the court that the evidence is insufficient to convict, may not be appealed and terminates the prosecution when a second trial would be necessitated by a reversal." *United States v. Scott,* 437 U.S. at 91, 98 S.Ct. 2187. "To permit a second trial after an acquittal, however mistaken the acquittal may have been, would present an unacceptably high risk that the Government, with its vastly superior resources, might wear down the defendant so that 'even though innocent, he may be found guilty.' " *Id.* (citation omitted). Here, the district court weighed the evidence presented by the Commonwealth and found it insufficient to convict. The dismissal was not based on a mistrial; it was related to Cozzolino's factual guilt or innocence.

Based on the foregoing, we find that Double Jeopardy prevents Cozzolino from being tried again for DUI. We therefore vacate the order of the Jefferson Circuit Court.

*Id.* at 487–88.

The Commonwealth contends that the holding in *Cozzolino* does not apply here, even if it is a correct holding, because the trial court in *Cozzolino* evaluated and

weighed the evidence remaining after suppression. Here, the Commonwealth states that the district court merely terminated the proceedings by way of dismissal and did not evaluate and weigh any evidence in making this ruling. Angus contends that the district court did not exclude all of the evidence, only the evidence that was acquired after she was placed in custody. Therefore, the district court considered the testimony from the Transportation Cabinet witness as well as Angus's admission that she had been drinking, which she argued that defense counsel conceded was made before she was placed into custody. On the basis of this limited evidence, the district court concluded that there was not enough evidence to prove her guilt beyond a reasonable doubt. Furthermore, Angus argues that even if the district court had excluded all of the evidence, acquittal would have been proper because the Commonwealth would have presented no evidence to establish her guilt. Finally, Angus points out that once the district court suppressed the evidence and the Commonwealth stated that it was not calling any further witnesses, defense counsel asked the court to find Angus not guilty and dismiss the case, which is what the district court announced on the record.[3]

We agree with Angus that the circumstances surrounding the dismissal of this case represent a directed verdict of acquittal and that she is therefore not subject to retrial on the same charges. While it most likely would have been futile, the Common-

wealth did not choose to seek an immediate review of the suppression ruling via an original action with the circuit court to seek a writ prior to the district court's decision to dismiss the case. We also agree with Angus's argument that acquittal is the proper result when the prosecution presents no evidence. Here, the district court considered what little evidence remained after the suppression ruling and decided that there was not enough to support a guilty verdict beyond a reasonable doubt. Therefore, we agree with the circuit court that the Commonwealth was barred from appealing the district court's ruling based upon double jeopardy principles.

Because we have held that the Commonwealth is barred from retrying this case, we need not reach the merits of whether the district court's ruling on the motion to suppress was proper.

For the foregoing reasons, the opinion and order of the Jefferson Circuit Court affirming the Jefferson District Court's dismissal is affirmed.

STUMBO, JUDGE, CONCURS.

JONES, JUDGE, CONCURS IN RESULT ONLY.

---

**3.** The Commonwealth argues in its reply brief that the district court's written order only states that the evidence was suppressed and the case was dismissed, not that it found Angus not guilty or acquitted her. The Commonwealth contends that because a court may only speak through its written orders, citing *Allen v. Walter*, 534 S.W.2d 453 (Ky. 1976), and *Commonwealth v. Hicks*, 869 S.W.2d 35 (Ky.1994), *overruled on other grounds by Keeling v. Commonwealth*, 381

S.W.3d 248 (Ky.2012), Angus may not cite to the district court's oral comments that she was found not guilty. We disagree with the Commonwealth's argument based upon the circumstances of this case, where the written ruling was very brief and included on a daily disposition report, and because the district court's statement on the record that it had found Angus not guilty when it dismissed the case against her was not inconsistent with its written ruling.