RENDERED: JANUARY 29, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1217-MR

FERRIS WHITAKER                                 APPELLANT

                 APPEAL FROM KENTON CIRCUIT COURT
v.               HONORABLE KATHLEEN S. LAPE, JUDGE
                       ACTION NO. 17-CR-00284

COMMONWEALTH OF KENTUCKY                  APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; COMBS AND JONES, JUDGES.

CLAYTON, CHIEF JUDGE: Ferris Whitaker appeals from a judgment and sentence of the Kenton Circuit Court after a jury convicted him of four counts of trafficking in a controlled substance in the first degree. As grounds for reversal, Whitaker argues: (i) the trial court abused its discretion in denying his motion for a continuance; (ii) the trial court's decision to conduct his trial *in absentia* after he

left the courtroom violated Kentucky Rules of Criminal Procedure (RCr) 8.28(1) and his due process and Confrontation Clause rights; (iii) the trial court improperly admitted Kentucky Rules of Evidence (KRE) 404(b) evidence of previous uncharged drug sales and sale of heroin by Whitaker; (iv) the Commonwealth improperly vouched for the credibility of a witness; and (v) the Commonwealth committed prosecutorial misconduct in its closing remarks during the penalty phase of the trial. Having reviewed the record and the applicable law, we reverse and remand for a new trial on the grounds that the trial court abused its discretion in refusing to grant Whitaker a continuance and erred in conducting his trial *in absentia*. Whitaker's remaining arguments will be reviewed to the extent they concern issues which are capable of repetition upon remand. *Grady v. Commonwealth*, 325 S.W.3d 333, 343 (Ky. 2010).

## I. Background

The charges against Whitaker stemmed from allegations that he sold crack cocaine to a police informant, Lisa Reeves, on four occasions in 2016: March 25, May 3, May 16, and June 8. Reeves testified that she made the controlled purchases of drugs from an individual she knew at the time as "Blue," and evidence was presented at trial to identify Whitaker as Blue. Reeves testified that she had regularly purchased cocaine from Blue for over a year before starting to work as an informant for the Covington Police Department. Reeves admitted

-2-

that she became an informant and brought the police "targets," individuals whom she identified as drug dealers, in exchange for the dismissal of drug trafficking charges she herself was facing. Her charges carried a potential sentence of fifteen years.

The Commonwealth showed the jury audio and video recordings of the four transactions between Reeves and Blue. Detective Anthony Jansen, who was Reeves's handler, testified about his investigation into Blue's identity, which included tracing the ownership of a phone number used to reach Blue and the vehicles driven by Whitaker. A police officer testified that when Whitaker was arrested in the case, the phone number he provided was the same as the number Reeves had used to contact Blue.

Detective Ryan Malone testified that he observed Whitaker arrive at the buy on March 25, 2016, in a green Mercedes with a tan top. Detective John Mairose saw Whitaker arrive in the same vehicle to the buys on May 3 and May 16, 2016, and Detective David Hoyle saw him arrive at the buy on June 8, 2016, in the same vehicle. The detectives noted the vehicle's Ohio license plate number, and Detective Hoyle photographed the car, the license plate, and the driver. The Commonwealth produced evidence of the purchase of the vehicle by Whitaker and its registration showing him as the owner.

A police officer testified that he was asked to pull over a green Mercedes with a tan top on May 10, 2016, which was not one of the buy dates. He testified that Whitaker was driving the car that day. The jury viewed the officer's bodycam footage as well as still images of that stop.

On the morning of trial, Whitaker made a motion for a continuance to retain new counsel. The trial court denied the motion, and Whitaker left the courtroom and did not return. The trial was conducted in his absence. For identification purposes the Commonwealth presented video evidence to the jury showing Whitaker in the courtroom prior to being sworn in to make the motion for a continuance. The jury found Whitaker guilty of four counts of first-degree, first-offense trafficking in a controlled substance. He was sentenced to serve four years on each count to be run consecutively for a total of sixteen years. This appeal followed. Additional facts will be presented below as necessary.

## II. Analysis

**(i) The denial of the motion for a continuance**

Whitaker argues that his Sixth Amendment right to assistance of counsel was violated when, on the morning of trial, the trial court denied his motion for a continuance to retain private counsel. The trial court denied the motion because the case had been continued several times, and the court wished to avoid any further delay.

Whitaker was indicted on March 23, 2017, and a public defender was appointed at his arraignment on May 30, 2017. Whitaker disagreed with his defense counsel regarding whether to file a motion to dismiss based on alleged discrepancies in the discovery, and he proceeded *pro se* solely for purposes of seeking dismissal of the charges. His motion was denied and the case was set for trial on December 12, 2017.

On December 11, 2017, the Commonwealth requested a continuance to develop information to bring an additional indictment. The trial court granted the motion over the objection of the defense, and a new trial date was set for February 20, 2018.

On February 19, 2018, the Commonwealth moved for another continuance because a witness from the Kentucky State Police Laboratory had taken a leave of absence for medical reasons. The defense objected on the grounds the Commonwealth had already had one continuance and had never indicted Whitaker on the additional charge which was the reason for the first continuance. The defense also moved to dismiss the case. The trial court granted the continuance and denied the motion to dismiss.

Whitaker thereafter retained private counsel. His new attorney appeared at the next scheduled court date, March 19, 2018. At a subsequent pretrial conference, a trial date of July 24, 2018 was set. When Whitaker's new

attorney gained access to the full discovery in the case, however, she had to withdraw due to a conflict. The public defender's office was reassigned to the case.

At the next scheduled court appearance on August 7, 2018, Whitaker expressed frustration with his defense counsel's request for a trial date in January because of co-counsel's schedule. He asked to represent himself but changed his mind after conferring with his attorney. A trial date was set for January 15, 2019. This latter date was continued by the trial court because it conflicted with another trial.

The trial was rescheduled for April 9, 2019. On February 18, 2019, the Commonwealth moved for a continuance because a police officer would be unavailable to testify due to his attendance at an out-of-town training. The trial was set for one week later, on April 16, 2019.

On the morning of trial, Whitaker moved for a continuance in order to retain new private counsel. He told the trial court that he did not feel comfortable going to a jury trial represented by a public defender. The trial court denied the motion, citing the lengthy history of the case, which had been going on for three years since 2017. The trial court reminded Whitaker that at a pretrial hearing on the previous day it had clearly told him it would grant no further continuances. The trial court also noted that Whitaker, who was not in custody, had had since

January to hire new counsel. The Commonwealth attorney incorrectly attributed a past continuance to Whitaker, who responded that the continuances were not his fault. The trial court replied that some of the delay was Whitaker's fault for wanting to hire new counsel or fire counsel. Whitaker reiterated that he was not comfortable with his current attorney and informed the court he had just received funds from his church the previous evening to hire private counsel. The trial court told Whitaker he could hire new counsel but there would be no continuance and the trial would go forward that day. Whitaker left the courtroom and did not return.

Whitaker argues that the decision to deny his motion for a continuance was not supported by the evidence as the trial court erroneously attributed prior delays in the case to Whitaker when in fact the Commonwealth was responsible for obtaining the greatest number of continuances. He contends that the trial court focused on expeditiousness rather than balancing the competing rights and interests at stake.

RCr 9.04 provides that the trial court, "upon motion and sufficient cause shown by either party, may grant a postponement of the hearing or trial." "The decision to delay trial rests solely within the court's discretion." *Snodgrass v. Commonwealth*, 814 S.W.2d 579, 581 (Ky. 1991), *overruled on other grounds by Lawson v. Commonwealth*, 53 S.W.3d 534 (Ky. 2001) (citations omitted).

"Factors the trial court is to consider in exercising its discretion are: length of delay; previous continuances; inconvenience to litigants, witnesses, counsel and the court; whether the delay is purposeful or is caused by the accused; availability of other competent counsel; complexity of the case; and whether denying the continuance will lead to identifiable prejudice." *Id.* A trial court abuses its discretion when its decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

The Commonwealth was largely responsible for the numerous delays in Whitaker's case. The only significant delays attributable to Whitaker were beyond his control: when his new private attorney withdrew after discovering a conflict of interest and when his defense counsel requested a delay due to co-counsel's schedule. Although the trial court was justifiably concerned about the length of time that had elapsed since the indictment and the inconvenience to the court that would result from yet another continuance, it expressly attributed the blame for the situation in part to Whitaker's decision to hire or fire his counsel, without acknowledging the role of the Commonwealth in causing the greater number of delays.

Furthermore, the trial court did not consider how its denial of a continuance could affect Whitaker's rights under the Sixth Amendment. Whitaker

informed the trial court that he had just obtained the funds to hire his own private counsel. A criminal defendant "who does not require appointed counsel" has a right under the Sixth Amendment "to choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144, 126 S. Ct. 2557, 2561, 165 L. Ed. 2d 409 (2006). "Deprivation of that right is structural error that does not require a showing of prejudice or that the counsel defendant received was ineffective." *United States v. Powell*, 847 F.3d 760, 777 (6th Cir. 2017) (citations omitted).

Admittedly, the right to select one's own counsel "is circumscribed in several important respects." *Id*. (internal citations omitted). Among those limitations is the trial court's discretion "in balancing the right to counsel of choice against the needs of fairness" and "the demands of its calendar." *Id*. (internal citations omitted). We recognize the deleterious effect a continuance would have on the trial court's calendar and its frustration with the lengthy history of the case. But, in light of the importance of the Sixth Amendment right at stake, and the fact that the trial court failed to acknowledge that the delays in the case were due primarily to the Commonwealth's requests for continuances, it was an abuse of discretion not to grant Whitaker at least a brief continuance to afford him an opportunity to retain private counsel.

**(ii) Trial *in absentia***

As additional grounds for reversal, we hold that the trial court erred in subsequently holding Whitaker's trial in his absence.

After denying Whitaker's motion for a continuance, the trial court called a short break at defense counsel's request. When the court reconvened, Whitaker had disappeared. A bench conference followed, at which defense counsel said Whitaker had told him he had to go to the bathroom. The trial court replied that Whitaker was not in the bathroom, and that the trial court had watched him walk out voluntarily. The trial court further stated that a bench warrant would be issued for Whitaker and the trial would proceed in his absence.

Both sides immediately objected. Defense counsel warned of potential violations of due process and the Confrontation Clause; the Commonwealth attorney told the court that identity was an important element of the prosecution's case and he wanted the jury to see Whitaker in person to compare with the individual in the video recordings of the drug transactions. The trial court agreed, over defense objections, that for identification purposes the jury could see the video recording of Whitaker being sworn in earlier that morning. The Commonwealth also expressed fears of reversal on appeal, invoking RCr 8.28 and voicing doubt as to whether the trial had started when Whitaker left. The trial court overruled all objections and summoned the jury pool to begin *voir dire*.

At approximately 9:44 a.m., a sheriff's deputy reported that Whitaker had been seen leaving the building at 9:10 a.m. The Commonwealth and the defense continued to raise objections to continuing but the trial court stated that it believed the trial had started before Whitaker left because he had been sworn in, and they had had questions and conducted conferences. The trial was conducted over the next two days, and Whitaker was convicted of all charges *in absentia*.

Whitaker argues that the trial court's decision to conduct the trial in his absence violated RCr 8.28(1) and his rights under the Confrontation Clause of the Sixth Amendment, the Due Process Clause of the Fourteenth Amendment, and Section 11 of the Kentucky Constitution.

Under RCr 8.28(1), a defendant must be present at every critical stage of a trial, except if the defendant voluntarily absents himself or herself after the trial has commenced:

> The defendant shall be present at the arraignment, at every critical stage of the trial including the empaneling of the jury and the return of the verdict, and at the imposition of the sentence. **The defendant's voluntary absence after the trial has been commenced in his or her presence shall not prevent proceeding with the trial up to and including the verdict.** The defendant may be permitted to remain on bail during the trial. Upon a hearing and finding by the trial court, that a defendant in custody on any charge, including a felony, intentionally refuses to appear for any proceeding, including trial, short of physical force, such refusal shall be deemed a waiver of the defendant's right to appear at that proceeding.

RCr 8.28(1) (emphasis supplied).

"RCr 8.28 has codified the common law right to be present at criminal proceedings, which has been recognized and preserved in the 6th Amendment to the United States Constitution and Section 11 of the Kentucky Constitution." *Scott v. Commonwealth*, 616 S.W.2d 39, 42 (Ky. 1981). The right is further rooted in the due process clause "when a defendant is not actually being confronted by witnesses or evidence against him." *Watkins v. Commonwealth*, 105 S.W.3d 449, 452 (Ky. 2003) (citing *United States v. Gagnon,* 470 U.S. 522, 105 S. Ct. 1482, 84 L. Ed. 2d 486 (1985)).

However, "[e]ven [t]he most basic rights of criminal defendants are . . . subject to waiver." *Fugate v. Commonwealth*, 62 S.W.3d 15, 19 (Ky. 2001) (quoting *New York v. Hill,* 528 U.S. 110, 114, 120 S. Ct. 659, 663, 145 L. Ed. 2d 560 (2000)). RCr 8.28(1) provides that a waiver of the right to be present at trial and confront witnesses may be assumed, without any further inquiry, if a defendant voluntarily absents himself after the commencement of trial. The terms of the Rule are consonant with those of its federal counterpart, Federal Rules of Civil Procedure (FRCP) 43, which in turn is in accordance with the long-standing common law rule recognized by the United States Supreme Court in *Diaz v. United States*, 223 U.S. 442, 32 S. Ct. 250, 56 L. Ed. 500 (1912):

> (W)here the offense is not capital and the accused is not
> in custody, the prevailing rule has been, that if, after the

> trial has begun in his presence, he voluntarily absents himself, this does not nullify what has been done or prevent the completion of the trial, but, on the contrary, operates as a waiver of his right to be present and leaves the court free to proceed with the trial in like manner and with like effect as if he were present.  (Citations omitted.)

*Taylor v. United States*, 414 U.S. 17, 18-19, 94 S. Ct. 194, 195, 38 L. Ed. 2d 174 (1973) (quoting *Diaz*, 223 U.S. at 455, 32 S. Ct. at 250) (internal quotation marks omitted).

Whitaker argues that RCr 8.28(1) was violated in his case because under Kentucky law, a trial commences when the jury is empaneled.  Because he left before *voir dire*, he contends that he is entitled to new trial.  He finds support for this contention in *Canter v. Commonwealth*, a case in which one of three criminal defendants escaped from the courtroom before the jury was sworn.  249 Ky. 474, 61 S.W.2d 9 (1933).  The trial court allowed the trial against the other two defendants to proceed, and the jury also convicted the escapee *in absentia*.  At that time, Section 183 of Kentucky's Criminal Code of Practice provided that a defendant indicted for a felony "must be present during the trial, but if he escapes from custody after the trial has commenced the trial may either be stopped or progress to a verdict at the discretion of the commonwealth's attorney."  *Id*. at 10. *Canter* holds that the absent defendant is entitled to a new trial because a "trial begins when the jury is sworn." *Id*.  (citing *Willis v. Commonwealth*, 85 Ky. 68, 2 S.W. 654, 8 Ky. L. Rptr. 653 (1887); *Collier v. Commonwealth*, 110 Ky. 516, 62

-13-

S.W. 4, 22 Ky. L. Rptr. (1929); *Blanton v. Commonwealth*, 210 Ky. 542, 276 S.W. 507 (1925)). *Canter* establishes a bright line rule that a waiver of the right to be present at trial cannot be assumed when a defendant voluntarily absents himself unless that absence occurs after the jury is empaneled.

The Commonwealth questions the precedential value of *Canter*, which predates RCr 8.28, and contends that newer case law supports a more flexible view of waiver. But the facts of the cases cited by the Commonwealth to support this argument are significantly distinguishable from the case at hand.

In *McKinney v. Commonwealth*, a defendant was convicted of two misdemeanors *in absentia* after receiving notice of his trial but failing to appear. 474 S.W.2d 384 (Ky. 1971). Unlike RCr 8.28(1), which requires a defendant's presence at all critical stages of a felony proceeding, RCr 8.28(4) provides in part that "[i]n prosecutions for misdemeanors or violations the court may permit arraignment, plea, trial and imposition of sentence in the defendant's absence[.]" The appellant in *McKinney* argued that the Rule was unconstitutional because it arbitrarily presumed waiver from his mere absence. 474 S.W.2d at 386. The Court agreed that "a defendant charged with a misdemeanor cannot be tried in his absence unless that absence is voluntary[,]" but it concluded that inferences were permissible to prove a such voluntary waiver, stating that if "the Commonwealth proves that the defendant had knowledge of the trial date, and did not appear, we

-14-

think an inference may be indulged that the absence was intentional, knowing and voluntary, particularly where the defendant is one with previous acquaintanceship with court procedure as a defendant on criminal prosecutions." *Id.*

*McKinney* is of limited utility in Whitaker's case, however, because it addresses waiver in the context of misdemeanor, rather than felony, trials. *McKinney* permits voluntary absence to be inferred if the defendant in misdemeanor proceedings has knowledge of the trial date but does not appear; by contrast, RCr 8.28(1) expressly provides waiver can also be inferred in felony proceedings, but only if the defendant's absence occurs voluntarily after the trial commences.

The other cases relied upon by the Commonwealth make this point clearly: the intentional waiver of the right to be present may be inferred in felony proceedings, but only when a defendant absents himself during the course of the trial. In *Helton v. Stivers*, 392 S.W.2d 445 (Ky. 1965), for example, a defendant being tried for a felony escaped during a recess in his trial. The trial continued in his absence and a verdict was delivered. The defendant was recaptured, and the judgment and sentence were pronounced when he was returned to court. Kentucky's highest court held that the procedure was "proper and valid" in accordance with RCr 8.28. *Id.* at 446. It also relied on *Collier v. Commonwealth*, *supra*, in which "a jury was selected and sworn, and, after the trial was thus begun,

appellant made escape, and continued at large for some months." *Collier*, 62 S.W. at 5. *Collier* held that the trial court's decision to proceed with the trial in the appellant's absence was proper because his trial began when the jury was sworn. *Id*. (citations omitted).

In *Taylor v. United States*, another case relied upon by the Commonwealth which is readily distinguishable, the United States Supreme Court held that a defendant had voluntarily waived the right to be present at his trial when he attended the morning session but then absented himself at the lunch recess and failed to return. The Court held that the trial court's decision to continue with the trial in his absence was fully in accordance with FRCP 43 and that the Rule itself was constitutional. *Taylor,* 414 U.S. at 20, 94 S. Ct. at 196.

The Commonwealth claims that Whitaker's case is akin to that of the defendant in *Illinois v. Allen*, 397 U.S. 337, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970), who was removed from the courtroom during *voir dire* because he was being disruptive, returned to the courtroom after the jury was selected, and then removed again afterwards due to his disruptive behavior. The trial court allowed the trial to continue after his removal. The United States Supreme Court overturned the lower court's ruling that the only way to comply with the Sixth Amendment would be to bind and gag the defendant in the courtroom, stating "we explicitly hold today that a defendant can lose his right to be present at trial if, after

he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Allen*, 397 U.S. at 343, 90 S. Ct. at 1060-61. Whitaker's absenting himself from the courtroom prior to *voir dire* cannot be equated with the ongoing, deliberate disruptions caused by the defendant in *Allen*, who was in the courtroom at the commencement of *voir dire* and was thereafter repeatedly warned by the trial court that he would be removed if he persisted in his behavior.

The Commonwealth also attempts to distinguish Whitaker's situation from that in *Crosby v. United States*, in which the United States Supreme Court reversed the conviction of a defendant who did not appear at all for his scheduled trial date and was not located until six months after his trial. The Court held that conducting the trial *in absentia* was a violation of FRCP 43. 506 U.S. 255, 262, 113 S. Ct. 748, 753, 122 L. Ed. 2d 25 (1993). The Commonwealth argues that by contrast Whitaker was in the courtroom and his trial had essentially begun before he absented himself because the parties had already argued pre-trial motions and were aware that a *venire* was present to begin *voir dire*. This broad reading of the commencement of trial to include such pre-trial proceedings does not comport with our case law, and we decline to broaden the circumstances under which the waiver

of significant constitutional rights may be automatically inferred. We are bound by the bright line rule established in *Canter* that waiver of the right to be present at trial can be inferred if a defendant voluntarily absents himself after the jury is empaneled.

The Commonwealth further contends that there is no standard provided for *Canter*'s assertion that a trial does not commence until a jury is sworn. It is well-established that for purposes of double jeopardy, a jury trial is deemed to begin, and jeopardy attaches, when the jury is empaneled and sworn. *Martinez v. Illinois*, 572 U.S. 833, 839-40, 134 S. Ct. 2070, 2075, 188 L. Ed. 2d 1112 (2014); *Commonwealth v. Angus*, 450 S.W.3d 719, 725 (Ky. App. 2014). In *Collier*, the Court noted that were it otherwise, a defendant who absents himself after the jury is empaneled and sworn could invoke double jeopardy to prevent a new trial. *Collier*, 62 S.W. at 5.

In light of the foregoing authorities, the trial court erred in deciding to proceed with Whitaker's trial *in absentia*. The error cannot be deemed harmless under RCr 9.24. Constitutional errors must be shown to be "harmless beyond a reasonable doubt" in order to be deemed harmless. *Brown v. Commonwealth*, 313 S.W.3d 577, 595 (Ky. 2010). The prejudice stemming from a defendant's absence from *voir dire*, a critical stage in the proceedings, is impossible to gauge and cannot be deemed harmless error. *Truss v. Commonwealth*, 560 S.W.3d 865, 871

(Ky. 2018). Whitaker was not present to confront the witnesses against him and his absence was explicitly characterized to as an admission of guilt by the Commonwealth. In his closing remarks, the Commonwealth attorney made repeated references to Whitaker's absence. He referred to Whitaker "wherever he is" and told the jury Whitaker had abandoned his defense counsel, and "that's why Whitaker is not here, he knew what was going to happen here today, he walked right past you because he had a guilty conscience." The potential prejudice stemming from these remarks cannot be deemed harmless beyond a reasonable doubt.

Although the evidence against Whitaker was compelling, he had a right to be present at every critical stage of the proceedings. His decision to absent himself from the proceedings prior to the commencement of trial was not sufficient on its own to infer a waiver of his rights under RCr 8.28(1).

**iii) The admission of KRE 404(b) evidence**

Whitaker's next argument addresses the admissibility of testimony from Reeves that Whitaker regularly sold drugs to her in the year before the sales for which he was indicted, and that he sold heroin as well as crack cocaine. Because the admissibility of this evidence may be an issue on retrial, we will review this argument.

Our standard when reviewing a question of admissibility of evidence is whether the trial court abused its discretion. *Johnson v. Commonwealth*, 105 S.W.3d 430, 438 (Ky. 2003).

At trial, the Commonwealth attorney asked Reeves how she met Blue. Reeves explained that he was a previous acquaintance; that she met him through Tamara Sweigart; and that he was Sweigart's "dope boy," which was slang for a drug dealer. Reeves identified Whitaker as Blue. She then testified that she had met him about a year prior to the charged offenses and had bought cocaine from him. When defense counsel objected, the Commonwealth attorney argued that the testimony provided context for why Reeves thought she could get drugs from Blue. The trial court overruled the objection.

Reeves then replied, "yes" when the Commonwealth attorney asked if when she started working as an informant, she told the officers she could buy cocaine from Blue. She also replied, "yes" when the Commonwealth attorney asked if she had purchased cocaine from him commonly.

Later, the Commonwealth elicited testimony from Reeves that Whitaker told her he had run low on crack cocaine and was going to try to sell heroin for a while. Detective Jansen testified that prior to the May 3, 2016, controlled buy, Reeves told him that Blue was out of crack but had heroin and the police initially thought they would be purchasing heroin.

KRE 404(b) prohibits the admission of evidence of "other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." Such evidence may, however, be admissible "[i]f offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Under KRE 403, the trial court may exclude relevant evidence if "its probative value is substantially outweighed by the danger of undue prejudice[.]" "[E]vidence of criminal conduct other than that being tried is admissible only if probative of an issue independent of character or criminal predisposition, and only if its probative value on that issue outweighs the unfair prejudice with respect to character" *Billings v. Commonwealth*, 843 S.W.2d 890, 892 (Ky. 1992). "The balancing of the probative value of . . . evidence against the danger of undue prejudice is a task properly reserved for the sound discretion of the trial judge." *English*, 993 S.W.2d at 945.

Whitaker argues that Reeves's testimony about prior drug transactions and references to heroin was not probative of the four trafficking charges he was facing and served impermissibly to suggest only bad character and propensity to commit crimes. He further argues that even if the testimony could be shown to be relevant, it was so unduly prejudicial that its relevance was outweighed.

Whitaker's trial strategy was wholly centered on undermining Reeves's credibility and consistency, based on the theory that Reeves had fabricated her story about buying drugs from Whitaker in order to get her own trafficking charges dismissed. In his opening statement, Whitaker's defense counsel stated that the case hinged on whether the jury believed Reeves to the extent that she "alleviated all reasonable doubt." Defense counsel told the jury that Reeves was charged with drug trafficking in 2015, and that in order to get her charges dismissed, she had to provide the police with "targets," people she claimed were selling drugs.

Reeves's testimony that she had known Whitaker or "Blue" for approximately a year and had commonly bought drugs from him before she began working as an informant for the police was probative of identity and absence of mistake and provided context for the arranged buys. Her testimony regarding her prior purchases was highly relevant to explaining why she was able to arrange the charged buys from him and why the police enlisted her as an informant. Whitaker placed identification squarely at issue. Evidence of Reeves's prior relationship with Whitaker was probative of identity, and its probative value outweighed the potential for undue prejudice.

The same cannot be said of the evidence that Whitaker had run out of cocaine and was selling heroin instead. This testimony was highly prejudicial and

of very limited, if any, probative value.  On remand, this evidence should not be admitted.

**(v) Vouching for the credibility of witness Lisa Reeves**

This argument was unpreserved by contemporaneous objection and Whitaker asks for palpable error review.  During his direct examination of Reeves, the Commonwealth attorney asked, "Did you lie about anything you testified here today?"  Reeves replied, "No."  In his closing argument, the Commonwealth attorney told the jury, referring to Reeves, "She didn't equivocate.  She didn't care what it made her look like.  She told the truth."  Because the defense directly attacked Reeves's credibility and placed her trustworthiness at the center of its case in its opening remarks, it was permissible for the Commonwealth to ask Reeves this question on direct examination and to describe her testimony as truthful in its closing statement, when counsel unquestionably has wide latitude.  *Brewer v. Commonwealth*, 206 S.W.3d 343, 350 (Ky. 2006).

**(vi) Prosecutorial misconduct**

Whitaker argues that the Commonwealth attorney committed prosecutorial misconduct when, in his closing argument during the penalty phase of the trial, he asked the jury to "send a message to the rest of the drug dealers in Kenton County."   After an objection by the defense was overruled, he continued: "I'm asking you to send a message . . . to all the people over in Ohio coming over

here to peddle their poison . . . We are tired of drug dealers coming over here and selling drugs. I want you to send a message that if you traffic drugs in Kenton County and you get caught, you'll pay a heavy price . . . I'm going to ask you to pick a number that you think sends a message that we are tired of it." Defense counsel unsuccessfully moved for a mistrial at the end of the Commonwealth's closing argument.

Our case law draws a critical distinction between what a prosecutor is permitted to say during the guilt and penalty phases of the trial. Whereas a prosecutor may not encourage a jury to consider deterrence in determining guilt, the jury may allow broader societal concerns to affect its choice of penalty:

> [I]it is essentially illogical, at the sentencing phase, to say that the prosecutor cannot encourage the jury to impose a sentence that speaks to deterrence, as well as punishes the specific crime before it. Deterrence is clearly not intended for that defendant alone, but rather his sentence sends the message to all others so inclined that their crimes will be punished, and that a jury made up of local citizens will not tolerate such offenses. This is a significant part of the benefit of public trials. We continue, however, to disapprove of this argument at the guilt stage. And even at the penalty phase, the "send a message" argument shall be channeled down the narrow avenue of deterrence. Any effort by the prosecutor in his closing argument to shame jurors or attempt to put community pressure on jurors' decisions is strictly prohibited. Prosecutors may not argue that a lighter sentence will "send a message" to the community which will hold the jurors accountable or in a bad light.

*Cantrell v. Commonwealth*, 288 S.W.3d 291, 299 (Ky. 2009).

-24-

The prosecutor's remarks in Whitaker's case were well within these parameters. They were made during the penalty phase of the trial and were directed only at urging the jurors to send a message of deterrence. The remarks made no attempt to discredit, pressure, or humiliate the jurors into imposing a lengthier sentence.

**Conclusion**

Because the trial court abused its discretion in denying Whitaker's motion for a continuance and erred in conducting his trial *in absentia*, its final judgment and sentence is reversed and the matter is remanded for a new trial.

COMBS, JUDGE, CONCURS.

JONES, JUDGE, DISSENTS AND FILES SEPARATE OPINION.

JONES, JUDGE: Respectfully, I dissent. As noted by the majority, the trial court is bestowed with great latitude in deciding whether a continuance is warranted. While a number of the prior delays were attributable to the Commonwealth, I cannot conclude that the trial court abused its discretion when it concluded that a further continuance should be denied. To this end, I note that the public defender had been reappointed to represent Whitaker some time before the date trial was set to begin. Whitaker knew of his approaching trial date and the need to secure private counsel beforehand to allow adequate time to proceed. I do not agree that he proffered an adequate explanation for his failure to do so before the date set for

trial. Moreover, I do not think he provided the trial court with enough specificity to justify the delay. Whitaker asserted that he had just raised the money from his church to be able to afford private counsel; however, he must have engaged in some planning to be able to do so. Yet, he arrived at court, on the day of his trial, without having yet secured new counsel or having engaged in any affirmative steps to do so aside from allegedly raising sufficient funds from his church. On the balance, I cannot agree the trial court abused its discretion. *See Shegog v. Commonwealth*, 142 S.W.3d 101, 105 (Ky. 2004) (holding that trial court did not abuse its discretion in denying a continuance for the purpose of allowing defendant to retain private counsel where "the trial court merely ruled that such counsel, if obtained, was required to enter an appearance prior to the scheduled trial date."); *see also Dishman v. Commonwealth*, 906 S.W.2d 335, 339 (Ky. 1995) (holding trial court did not abuse its discretion in denying a continuance based on newly hired private counsel where there was "no evidence of any good faith effort on [defendant's] part to prepare for trial with either appointed counsel or retained counsel.").

I also disagree that Whitaker's trial had not begun, at least for the purposes of RCr 8.28(1), when Whitaker voluntarily exited the courthouse. While empanelment of the jury marks the beginning of a criminal trial for purposes of double jeopardy, I do not agree that the same standard should be applied for waiver

under RCr 8.28. While published case law applying RCr 8.28 is scant, the case law applying the analogous federal rule, Fed. R. Crim. P. 43, is more abundant. Federal cases are in agreement that empanelment of the jury is not required before a trial can be considered to have commenced. Rather, "trial commences no later than on the day of jury selection, without respect to whether the defendant is present at the time prospective jurors enter the courtroom." *United States v. Sterling*, 738 F.3d 228, 236 (11th Cir. 2013) ("the district court was [not] required to use a talismanic phrase that the trial was beginning, especially where here it was obvious that the trial was beginning based on the judge's explanation of the video procedures and the calling of the case in open court."); *see also United States v. Benabe*, 654 F.3d 753, 771-72 (7th Cir. 2011) ("We conclude, however, that the phrase "initially present at trial" in a jury trial must refer to the day that jury selection begins, though not to the precise moment that one or more prospective jurors enter the courtroom.").

The concept that a defendant could go through pre-trial proceedings to the point of bringing the jury pool into the courtroom, and then, perhaps because he was dissatisfied with the outcome thereof, freely depart, such that the trial court is prohibited from moving forward seems to me to be a distortion of the intent and purpose of RCr 8.28. Whitaker knew that his trial was going forward after the recess; he had participated in pretrial motions; and the trial court had called the

case. In my opinion, Whitaker waived his right to participate in his trial by voluntarily exiting the courthouse on the day of his trial.

BRIEFS FOR APPELLANT:

Steven Nathan Goens
Molly Mattingly
Assistant Public Advocates
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Thomas A. Van De Rostyne
Assistant Attorney General
Frankfort, Kentucky